Wright, J.,
delivered the opinion of the court:
Claimant brings this suit as one of the registers under the authority of the act of Congress approved March 3, 1903 (32. Stat. L., pt. 1, p. 1010), which provides, in effect, that any one or more of the registers and receivers of the United States land office in the State of Kansas who had the responsibility of the sales of Osage ceded, trust, and diminished reserve land, under the treaty of September 29, 1865, with the Osage Indians, and the acts of Congress for carrying the treaty into effect, may bring suit in this court against the Osage Nation and the United States to determine the claim of the jffaintiff or jffaintiffs for commissions or compensation for the sale of said lands or any service or duty connected therewith, and by that act this court is given jurisdiction to hear and determine the cause, and to render judgment therein on the merits.
The above-mentioned treaty (Ind. Treaties, 1873, 585), as far as it is material to this decision to state, in effect required the ceded lands to be surveyed and sold, under the direction of the Secretary of the Interior, on the most advantageous terms for each (the United States and the Indians), as public lands are surveyed and sold under existing laws, withholding, however, preemption claims and homestead settlements, the net proceeds of such sales remaining after cost of survey and sale had been paid, and the sum of $300,000 placed to the credit of the Osage Indians, to be placed to the credit of the “ Civilization fund,” for the education and civilization of Indian tribes in the United States. The trust lands were required to be surveyed and sold for the benefit of the Osage Indians at a price not less than $1.25 per acre, as other lands are surveyed and sold, under such rules and regulations as the Secretary of the Interior shall from time *335 to time prescribe, and the proceeds of such sales, after deducting all expenses incident to the proper execution of the trust, to be placed in the Treasury of the United States to the credit of the Osage Indians. And it was agreed that if the Indians should remove from the State of Kansas (which they did) the diminished reserve lands should be disposed of in the same manner and for the same purposes .provided in relation to the trust lands, except that 50 per cent of the proceeds thereof might be used in the purchase of lands for a suitable home for the Osage Indians in the Indian Territory.
Appropriate legislation was passed by Congress to carry into effect the treaty and to sell the lands mentioned therein in accordance with its terms. The Secretary of the Interior, November 23 and December 19, 1867, issued to the registers and receivers at Humboldt, Kans., his instructions containing rules and regulations relative to the sale of the ceded and trust lands, and also March 28, 1871, relative to the diminished reserve lands, like instructions, in all of which it was explicitly stated, in effect, that the registers and receivers would each be allowed a commission for the sale of the lands of all classes — ceded, trust, and diminished reserve — of 1 per cent each on the proceeds of the sales, with limitation to the legal maximum compensation provided by law, inclusive of commissions and fees on the disposal of public lands; and in the instructions of March 28, 1871, the former instructions relative to compensation were restated and epitomized in the following language:
“ Nothing, however, shall be herein construed as authorizing the register and receiver to receive more than the maximum fees and commissions of $2,500 per annum now allowed by law, and the receiver in adjusting his accounts will take care to first ascertain how much short of the maximum the receipt from public lands, including the fees received from declaratory statements on the Osage lands, will bring their fees and commissions, and will then charge to the Indian fund only so much commissions as will bring their compensation to the maximum.”
The treaty in question constituted the contract between the United States and the Osage Indians by which the latter *336 ceded and surrendered all their rights and interests in the lands embraced in the Kansas Reservation, and is to be construed like other contracts. Every provision and stipulation in the contract should be given the force and effect intended by the parties thereto at the time it -was entered into. It will not be disputed that it was the intention of the parties that the sale of the lands should produce to the beneficiaries, the Indians, as large a net sum as was reasonably practicable. It. was stipulated in the contract that the lands should be surveyed and sold, under the direction of the Secretary of the Interior, on the most advantageous terms, as public lands are surveyed and sold, and under such rules and regulations as that officer might from time to time prescribe. By the terms of the contract the Indians were entitled to the judgment and discretion of the Secretary of the Interior, and to have that officer use his valuable services in the direction of the sales of their lands. This they might well have regarded as a strong-protection to their rights and interests, and was no doubt a considerable inducement for them to enter into the contract as they did. In accordance with this contract as regards the Indians, and otherwise in obedience to law, the Secretary of the Interior did exercise his judgment and discretion in the sale of the lands, and among other things added to the duties of the register and receiver the sales of the same, fixing the compensation for such services, in effect, at the difference between the commissions and fees on disposal of public lands and the maximum compensation allowed by law, and in no event should such compensation exceed the legal maximum.
While the rules and regulations so prescribed by the Secretary of the Interior were in force the claimant accepted the appointment and qualified as register. He performed the services, so required of him, and received the maximum compensation provided therefor by law and the regulations of the Secretary of the Interior, without objection or protest, or claim for more compensation, so far as we discover in the record, until in February, 1902, thirty years after the last service was performed, when he initiated this claim in Congress, and by them it has been sent to this court for our determination. We are of the opinion that claimant voluntarily under *337 took to do, and did perform, the services described in his petition for the compensation he has already received, and that neither the United States nor the Osage Nation is liable to him for further compensation, nor did such liability exist at any time.
The case of Brindle (110 U. S., 688), upon which much reliance is placed by counsel for claimant, is easily distinguished from the case presented here. In that case it was said that so far as anything appeared in the record then before the court, the appointment of Brindle was not made because he was receiver of the land office. In the present case no specific personal appointments were made, but the registers.and receivers generally were designated to perform the service, and the duties were assigned to their respective offices without regard to the personal incumbents then existing. Claimant was not at the time of such designation and assignment of duties a register, but was appointed, and accepted such appointment, after the disposal of the ceded and trust lands had been attached to the office in which he qualified, and thereby obligated himself to perform all such duties as appertained thereto. The disposal of the diminished reserve lands was later included, but by continuing in the service claimant must be considered as having acquiesced in that action. Having volunarily assumed to discharge all the duties of the office, he must be presumed to have known what the .duties were, and that the services for which he now seeks further compensation were engagements included in his acceptance of the office at the time he entered upon the performance of its duties, which is further evidenced by his continued service without objection, and for the designated compensation. In the present case the appointment of claimant to the office of register included the appointment to do the business appertaining to the sale of the identical lands in question, without special mention.
. In conformity to the views herein expressed, the petition of the claimant will be dismissed.